## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Bryan Valentin,

                 Petitioner,

v.

Jeffrey Woods,

                 Respondent.

Case No. 19-cv-11068

Judith E. Levy
United States District Judge

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Bryan Valentin filed an amended habeas corpus petition under 28 U.S.C. § 2254.[1] He challenges his convictions for first-degree murder, Mich. Comp. Laws § 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. He raises thirteen claims for habeas relief.

_____

[1] Petitioner originally filed his petition *pro se* in the United States District Court for the Western District of Michigan. (*See* ECF No. 1.) After Petitioner retained counsel, an amended petition was filed, and the case was transferred to this Court. (*See* ECF No. 5.)

The state courts' denial of these claims was not contrary to or an unreasonable application of Supreme Court precedent. Accordingly, the petition for a writ of habeas corpus is denied. The Court also denies a certificate of appealability, and grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I.   Background

Petitioner was tried jointly with co-defendants Jean Carlos Cintron, Diego Galvan, and Raul Galvan on charges related to the shooting death of Lavar Crawford. Petitioner was tried before a separate jury. The Michigan Court of Appeals provided this overview of the circumstances leading to Petitioner's conviction:

> Crawford died as a result of sustaining multiple gunshot wounds, and the manner of his death was a homicide. The prosecutor sought to prove the first-degree murder charge under two theories: (1) defendant actually shot Crawford, and/or (2) defendant aided and abetted Crawford's killing. Just before the killing, an armed defendant [Bryan Valentin] and his codefendants went to Antoine Hurner's house looking for Crawford's home because Crawford had allegedly robbed defendant's younger brother, Cintron. Defendant told Hurner that Crawford owed him money. Defendant angrily left Hurner's home when Hurner would not provide him with Crawford's contact information.

> A short time later, defendant and his codefendants, all armed, forced their way into Crawford's home. According to Beatrice McCray, Crawford's girlfriend, defendant was the one who approached the home first and led the other men into the home. McCray further testified that defendant directed her to call Crawford and advise him to come home. Once Crawford arrived outside, the men went out through the front door and began firing their guns. [Crawford] was ultimately shot twice. It is not clear who fired the first shot that hit Crawford, but, according to eyewitness Teisha Johnson, codefendant Diego fired the second shot. Diego approached Crawford as he was crawling on the grass after having been shot, and shot Crawford, once more, at close range. Defendant stood nearby.

*People v. Valentin*, No. 292825, 2010 WL 4260896, at *1–2 (Mich. Ct. App. Oct. 28, 2010).

Petitioner was convicted by an Oakland County Circuit Court jury and, on June 15, 2009, sentenced as a fourth habitual offender to life imprisonment for first-degree murder, 60 to 90 years for second-degree murder, 10 to 20 years for felon in possession of a firearm, and 2 years for each felony-firearm conviction. *See id.* at *1.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising these claims: (i) insufficient evidence supported the first-degree murder conviction, (ii) defense counsel was ineffective for advising Petitioner not to testify, (iii) the convictions for second-degree murder,

3

felony murder, and felony-firearm violate the Double Jeopardy Clause, and (iv) the trial court gave a coercive instruction to the deadlocked jury. The Michigan Court of Appeals vacated Petitioner's convictions for second-degree murder and felony-firearm as violative of the Double Jeopardy Clause and affirmed the convictions in all other respects. *People v. Valentin*, No. 292825, 2010 WL 4260896 (Mich. Ct. App. Oct. 28, 2010). The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Valentin*, 489 Mich. 859 (2011).

Petitioner next filed a motion for relief from judgment in the trial court raising eleven claims – six prosecutorial misconduct claims, three ineffective assistance of trial counsel claims, an ineffective assistance of appellate counsel claim, and a claim that the trial court abused its discretion in refusing to accept a jury note indicating that the jury was hung. The trial court denied the motion for relief from judgment. *See* Op. & Order, *People v. Valentin*, No. 08-223666 (Oakland County Cir. Ct. May 3, 2013) (ECF No. 3-19). The Michigan Court of Appeals denied Petitioner's application for leave to appeal the trial court's decision. *People v. Valentin*, No. 318913 (Mich. Ct. App. March 24, 2014). The

4

Michigan Supreme Court also denied leave to appeal. *People v. Valentin*, 497 Mich. 903 (2014).

On December 30, 2014, Petitioner filed a habeas corpus petition in the United States District Court for the Western District of Michigan. *Valentin v. Woods*, No. 2:14-cv-00257. The State filed an answer on June 21, 2016. Petitioner filed a motion for a stay so he could return to the trial court to exhaust additional issues. The Court granted the motion for a stay on June 23, 2016. *Id.* (ECF No. 23.)

Petitioner returned to state court and filed a second motion for relief from judgment on May 9, 2017, raising five claims for relief. The trial court denied the motion. *See* Op. & Order, *People v. Valentin*, No. 08-223666 (Oakland County Cir. Ct. Aug. 7, 2017) (ECF No. 8-17). The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner leave to appeal. *People v. Valentin*, No. 339882 (Mich. Ct. App. Feb. 7, 2018), *lv. den.* 503 Mich. 912 (2018).

Petitioner then moved to reopen his habeas petition in the Western District of Michigan Court. The Court lifted the stay and permitted him to file an amended petition. *Valentin*, No. 2:14-cv-00257 (ECF No. 29.)

Petitioner also moved to transfer venue to this Court. (*Id*. at ECF No. 30.)

The Court granted the motion. (*Id*. at ECF No. 33.)

Petitioner's amended petition incorporates the claims raised in his

original petition and adds five additional claims. The following claims are

before the Court:

> I. Petitioner was denied his federal due process right where his first-degree murder conviction is not supported by sufficient evidence of guilt.

> II. The trial counsel violated Petitioner's federal constitutional right to the effective assistance of counsel by advising Petitioner not to testify.

> III. Petitioner was denied a fair trial where the trial court gave a coercive instruction to the jury which substantially departed from the standard deadlock instruction and tended to require the jury to reach a unanimous verdict.

> IV. Petitioner was denied his due process right to a fair, meaningful and reliable trial as a direct result of several instances of prejudicial prosecutorial misconduct contrary to the federal constitution.

> V. Petitioner was denied his Sixth Amendment right to the assistance of trial counsel due to trial counsel's deficient and prejudicial performance rendering his trial fundamentally unfair and unreliable.

> VI. The prosecutor abused his charging authority by deliberately overcharging Petitioner with aiding and abetting in this alleged first-degree murder case where all the elements thereof were not proven beyond a reasonable doubt as the killing was spontaneous, out of his control, and

committed in the heat of passion and where the prosecutor misadvised the jurors that he did not have to actually prove who put the .40 caliber slug in the body of Laval Crawford, and did not prove this beyond a reasonable doubt in violation of due process under the federal constitution.

VII. Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel because counsel failed to raise the within issues on direct appeal and failed to give adequate advice and assistance in the preparation of his supplemental brief and for pursuing weaker claims while ignoring significant and obvious claims resulting in counsel's deficient and prejudicial performance.

VIII. Petitioner has established his entitlement to relief and has demonstrated both good cause and actual prejudice in this post appeal proceeding under MCR 6.508(D)[3](a)(b).

IX. Petitioner is not procedurally defaulted from raising his claims in the successive motion for relief from judgment and his habeas petition and he is entitled to a reversal of his convictions and a new trial where he has made a claim of actual innocence based on newly discovered evidence.

X. Petitioner is entitled to a new trial where he has demonstrated his actual innocence and his sentence of life without parole violates his 8th Amendment United States constitutional right to be free from cruel and/or unusual punishment.

XI. Petitioner is entitled to a new trial where he has demonstrated his actual innocence and his sentence of life without parole violates his substantive Due Process rights under the United States Constitution.

XII. Petitioner is entitled to a new trial where his trial counsel was constitutionally ineffective, contrary to the 6th Amendment, in his failure to procure Mr. Bass as a witness

at trial and his failure to investigate this matter in any way to find witnesses in support of Petitioner's self-defense claim.

XIII. Petitioner is entitled to a new trial where his trial counsel was constitutionally ineffective, contrary to the 6th Amendment, in planning his whole trial strategy on his belief that co-defendant Diego Galvan would testify.

(*See* ECF No. 4.)

Respondent filed an answer and amended answer in opposition. Respondent argues that several claims are procedurally defaulted and that all claims are meritless. (ECF Nos. 2, 7.) Petitioner filed a reply brief. (ECF No. 12.)

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this

8

standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Sufficiency of the Evidence

In his first claim, Petitioner asserts that the prosecution presented insufficient evidence to sustain his conviction for first-degree

premeditated murder because the premeditation and deliberation element was not proven beyond a reasonable doubt. Respondent argues that this claim is meritless.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge focuses on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony

and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *People v. Anderson*, 209 Mich. App. 527, 537 (1995). Premeditation and deliberation may be established by evidence showing: "(1) the prior

relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170 (1992). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398 (1997).

To convict a defendant under an aiding and abetting theory, a prosecutor must show: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement. *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 460 Mich. 757 (1999)). The state of mind of an "aider and abettor[] … may be inferred from all the facts and circumstances." *Carines*, 460 Mich. at 758. Factors that may be

considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id.* at 758. "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992).

The Michigan Court of Appeals held that sufficient evidence was presented to sustain Petitioner's convictions. This conclusion was not contrary to, or an unreasonable application of, Supreme Court precedent. Viewed in a light most favorable to the prosecution, Petitioner went to Antoine Hurner's house shortly before the shooting looking for Crawford because Crawford had stolen money from Jean Cintron. Hurner testified that Petitioner was armed and became angry when Hurner would not tell Petitioner where Crawford lived. A short time later, Petitioner entered Crawford's home. Beatrice McCray, Crawford's girlfriend, testified that Petitioner was carrying a gun and told her to call Crawford to tell him to come home. When Crawford arrived home, Petitioner and the other men pulled masks up over their faces and, still carrying their guns, exited the home. Crawford was shot moments later.

Petitioner's conduct after the homicide was also incriminating. Tape recordings of Petitioner's calls to his girlfriend from jail during which he asked her to set up an alibi for him were played for the jury. All this evidence, considered together and in a light most favorable to the prosecution, was sufficient for a jury to find Petitioner guilty of first-degree murder. Habeas relief is denied on this claim.

**B. Ineffective Assistance of Counsel (Claims II, V, VII, & VII)**

Petitioner's second, fifth, seventh and eighth claims concern defense counsel's performance. Petitioner alleges that counsel was ineffective for advising him not to testify in his own defense, failing to investigate and call res gestae witnesses,[2] failing to procure Davarus Bass as a witness, and basing the defense strategy on a mistaken belief that co-defendant Diego Galvan would testify.[3]

---

[2] "A res gestae witness is one who is present at the scene of the alleged crime, at the time of the alleged crime, or one who had occasion to observe the surrounding events and circumstances. This includes those who were eyewitnesses to some event in the continuum of the criminal act and whose testimony will aid in the full disclosure of facts surrounding the alleged commission of the crime." *People v. Dyer*, 425 Mich. 572, 577 n.4 (1986) (citation omitted).

[3] Petitioner also claims that counsel was ineffective for failing to object to several instances of prosecutorial misconduct. The Court addresses that claim in the prosecutorial misconduct section set forth below.

## 1. Legal Standard: *Strickland v. Washington*

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and

quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 2. Counsel's Advice Not to Testify

First, Petitioner claims that counsel was ineffective in advising him not to testify. The Michigan Court of Appeals found no evidence that Petitioner wished to testify but was prevented from doing so or that counsel's advice that Petitioner should not testify was anything but sound. *Valentin,* 2010 WL 4260896 at *2–3.

It is well-established that a criminal defendant has a constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 52–53 & n. 10 (1987). When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). While a trial court has no duty to inquire on its own whether a defendant knowingly, voluntarily, or intelligently waives his right to testify, *United States v. Webber*, 208 F. 3d 545, 551–52 (6th Cir. 2000), in this case, the trial court did so inquire. The trial court specifically advised Petitioner that the decision whether to testify at trial was his alone. (ECF No. 8-8,

PageID.2041.) Petitioner stated that he understood his right to testify and did not want to testify. (*Id.*) Defense counsel indicated this was consistent with their earlier discussions. (*Id.*)

On this record, there is no indication that Petitioner's decision not to testify was coerced nor is there any indication that counsel performed deficiently by advising Petitioner not to testify. A defendant retains the "ultimate authority" to decide whether to testify on his own behalf. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The record provides no indication that the decision not to testify was anyone's other than Petitioner's. Even if defense counsel made an "erroneous strategic prediction" concerning the wisdom of Petitioner testifying, this is not, by itself, proof of deficiency. *Lafler v. Cooper*, 566 U.S. 156, 174 (2012). Habeas relief is accordingly denied on this claim.

### 3. Failure to Investigate and Call Witnesses

Next, Petitioner claims that counsel was ineffective for failing to investigate and call res gestae witnesses, including Davarus Bass. In his first motion for relief from judgment, Petitioner raised the same claim. The trial court held that Petitioner failed to overcome the presumption that counsel's decision was sound trial strategy because Petitioner failed

to explain how the witnesses would benefit his case or to offer any affidavits with the witnesses' expected testimony. (ECF No. 3-19, PageID.1040.) Five years later, Petitioner filed a successive motion for relief from judgment in the trial court. He again claimed that counsel failed to investigate and call witnesses. This time, however, he also filed the affidavits of Davarus Bass, Diego Galvan, and Jean Cintron.

<u>Davarus Bass's Affidavit</u>

According to his affidavit, Davarus Bass was present when Laval Crawford was fatally shot. (ECF No. 4-1, PageID.1294.) Crawford called Bass on September 13, 2008, and told Bass he "needed to come through." Crawford picked Bass up within thirty minutes of the phone call. Five other people were in the vehicle. Bass noticed that Crawford had a gun sticking out of his waistband. Bass was carrying a gun, as were at least two other people. When they arrived at Crawford's home, the front door was locked. The group went around the back of the home. A group of people, including Petitioner, appeared in the driveway. He did not see Petitioner with a gun. When Crawford saw the other group of men, he pointed his gun toward the group. Bass then heard gunshots. Bass did not know who fired the first shot, but he knew that Crawford aimed his

gun at the other group before any shots were fired. No one interviewed him before trial. Finally, Bass stated that, if called to testify at a hearing, he would testify consistent with the statements in his affidavit.

### Diego Galvan's Affidavit

Petitioner also submitted affidavits of two co-defendants, Diego Galvan and Jean Cintron. (ECF No. 4-3, PageID.1297–1301.) In his October 20, 2015 affidavit, Galvan stated that he went to Crawford's house with Petitioner and Jean Cintron to try to convince Crawford to return money that Crawford had stolen from Cintron earlier that day. According to Galvan's affidavit, no one in the group that went to Crawford's house had any intention of harming Crawford. When Crawford arrived home, Galvan saw that Crawford had a gun. He and Petitioner were trying to leave the property when he heard someone yell that they should get down and then he heard a gunshot. Galvan then fired several shots in the direction of where the gunshot came from.

### Jean Cintron's Affidavit

In his August 19, 2016 affidavit, Jean Cintron stated that he was robbed of money and jewelry by Crawford and others on the morning of the shooting. Cintron, Petitioner, and Galvan went to Crawford's house

to try to retrieve some of his jewelry. After they entered the home, he heard banging and saw Crawford and others outside the home, many carrying guns. The front door was locked, so the Crawford group went to the back door. Petitioner and Galvan exited through the front door. Cintron then heard yelling and gunshots from the back and side of the home. He then fled from the home.

The trial court denied Petitioner's successive motion for relief from judgment, and stated:

> Defendant next argues that he is entitled to relief from judgment because he was denied the effective assistance of counsel at trial where defense counsel failed to secure D[a]varis Bass's presence and testimony at trial. Again, this Court may not grant a motion for relief from judgment that alleges grounds for relief that were decided against the defendant in a prior Motion for Relief from Judgment under MCR 6.501 *et seq.* unless the defendant establishes that a retroactive change in the law has undermined the prior decision. MCR 6.508(D)(2). Here, Defendant argued in his first Motion for Relief from Judgment that he was denied the effective assistance of counsel because trial counsel failed to interview res gestae witnesses and failed to seek the prosecutor's assistance in locating such witnesses. This Court denied Defendant's request for relief on the basis that he failed to submit affidavits of the witnesses or to otherwise show how the witnesses would have benefited his case. Having failed to properly support his claim in his first Motion for Relief from Judgment, Defendant cannot now take a

second bite at the apple by bringing the same claim a second time, now having conducted an investigation and having secured the affidavits that should have been submitted with his first motion. This Court notes that Defendant was aware of Davarus Bass's identity when he filed his first Motion for Relief from Judgment, and Defendant has not shown that Bass's testimony, or the testimony of codefendants Galvan and Ci[n]tron, was not available with the exercise of due diligence when he filed his first Motion for Relief from Judgment. Because Defendant's ineffective assistance of counsel claim was already decided against him in his first motion for relief from judgment and Defendant has not established that a retroactive change in the law undermined the prior decision, MCR 6.508(D)(2) bars this Court from granting relief from judgment on the basis of this argument.

Op. & Order, *People v. Valentin*, No. 08-22366, 9–10 (Oakland County Cir. Ct. Aug. 7, 2017). (ECF No. 8-17, PageID.2214–2215.)

In sum, the trial court held that Petitioner raised virtually the same claim in his first motion for relief from judgment and could not, under principles of collateral estoppel, raise the same claim in a second motion with "new" evidence that should have been known and available to him at the time he filed the first motion. The trial court's decision that Petitioner was not entitled to a "second bite at the apple" and its earlier decision that counsel was not ineffective were not contrary to or an unreasonable application of Supreme Court precedent.

21

Petitioner supports this ineffective assistance of counsel claim with affidavits from Bass, Galvan, and Cintron – three convicted felons who are all currently incarcerated. The affidavits were signed years after the shooting. Long-delayed affidavits like these which seek to exonerate a habeas petitioner are "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993). Indeed, claims "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id.* at 417. Petitioner fails to provide any explanation for the long delay in obtaining an affidavit from Bass. He certainly knew of Bass's existence at the time of the trial and was aware of his claim that counsel was ineffective for failing to call witnesses at least as early as the filing of his first motion for relief from judgment. But he did not obtain Bass's affidavit until eight years after the shooting. Notably, Bass did not state in his affidavit that he would have been willing to provide this testimony at trial, only that he would testify at a post-conviction hearing. In light of the doubly-deferential standard of review applicable to ineffective assistance of counsel claims, Petitioner fails to rebut the "strong presumption" that counsel's performance fell

"within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Petitioner also fails to show that trial counsel's handling of co-defendants Cintron and Galvan was ineffective. A defendant relying on this type of affidavit must show that his codefendant in fact would have waived any Fifth Amendment privilege and testify at trial. *See Ross v. United States*, 339 F.3d 483, 493–94 (6th Cir. 2003). Galvin and Cintron declined to testify in their own defenses. There is no reason to believe that, had defense counsel called them as witnesses, either would have waived his Fifth Amendment right against self-incrimination. Petitioner has not shown that counsel had any indication at the time of trial that either witness would have testified in a way that would have benefitted his defense. Further, postconviction statements by codefendants are particularly suspect because codefendants may try to assume full responsibility for a crime without any adverse consequences. *Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004).

Petitioner also submitted the affidavits of Andre Jones and Charles Travis in support of his habeas petition. (*See* ECF No. 4-5, PageID.1309–1312.) These affidavits were presented for the first time on appeal from

the trial court's denial of Petitioner's second motion for relief from judgment. In his June 14, 2017 affidavit, Charles Travis stated that he had contact with Crawford before Crawford died. Although he does not specify the date this contact occurred, the Court will assume that he saw Crawford on the day of Crawford's death. Travis saw Crawford carrying a handgun tucked into his waistband. Notably, there is no indication that defense counsel knew or should have known about Travis's existence before or during the trial.

In his August 2018 affidavit, Andre Jones stated that he lived around the corner from Crawford. On the day of the shooting, Crawford contacted Jones to tell him to come by his house to look at some jewelry he was selling. When Jones approached the house, he saw several men and cars at the home, and one of the men told Jones that they were there to get jewelry back that had been stolen. Jones called Crawford to warn him, and Crawford said he would take care of it. Jones also stated that Robert Bell, Crawford's brother, told him the next day that he was present and had a gun when his brother was shot.

These affidavits are inherently suspect because they were executed approximately 9 and 10 years after the crime and they do not provide an

explanation for this delay. In addition, neither man claims to have witnessed the actual shooting. In short, the skepticism with which these types of affidavits are viewed has not been overcome.

### 4. Defense Strategy

Finally, Petitioner argues that defense counsel was ineffective because he based the entire defense strategy on the belief that Diego Galvan would testify. A review of the state-court record shows that counsel's strategy was to challenge the credibility of the prosecution's witnesses and, that he vigorously and effectively cross-examined witnesses. In closing argument, defense counsel emphasized the inconsistencies and weaknesses in the testimony of various witnesses.

It is a habeas petitioner's burden to overcome the presumption that counsel performed effectively by showing that the alleged errors were not sound strategy under the circumstances. *Strickland*, 466 U.S. at 689. Here, Petitioner fails to overcome the presumption that counsel's approach was based on "sound trial strategy." *Id*. (quotation omitted).

### C. Deadlocked Jury Instruction (Claim III)

Petitioner argues that the trial court erred by giving an unduly coercive deadlocked jury instruction. Respondent maintains this is

procedurally defaulted because defense counsel failed to object to the charge. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claim.

When a jury is deadlocked, a trial court may give a supplemental charge urging the jury to continue its deliberations with the hope that they will then arrive at a verdict. *See Allen v. United States*, 164 U.S. 492 (1896). The constitutionality of a deadlocked jury instruction depends upon whether the instruction in question was "coercive." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).

In *Allen*, the Supreme Court approved a jury instruction which, in substance, advised the jury that:

> in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of

each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, on the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Id.* at 501.

In this case, on the second day of deliberations the jury sent a note asking "How do we indicate our inability to reach a decision on certain counts?" (ECF No. 8-11, PageID.2106.) In response, the trial court gave Michigan's standard deadlocked jury instruction. Petitioner does not challenge the trial court's use of Michigan's version of the *Allen* charge. He does challenge the trial court's supplemental deadlocked jury instruction given the next day.

On the third day of deliberations, the jury sent a note to the court which read: "The jury is hung on two counts and wo do not believe there is any chance on a unanimous decision on those two counts." (ECF No. 3-

12, PageID.758.) In response, the trial court gave the standard deadlocked jury instruction and the following supplemental instruction:

> You should consider that the case should at some point be decided. That you are selected in the same manner and from the same source from which any future jury must be. And there is no reason to suppose that the case will ever be submitted to twelve men and women more intelligent, more impartial or more competent to decide it or that more or clear evidence will be produced on the one side or the other.
>
> And with this view– excuse me. And with this in view it is your duty to decide the case if you can conscientiously do so without surrendering your conscientious belief. With that, ladies and gentlemen, I'm asking you to return to the jury room and continue deliberations.

(ECF No. 8-12, PageID.2120–2121.)

Petitioner objects specifically to the court's comment that, if a verdict was not reached, another jury would have to be selected. He argues that this was unduly coercive because it effectively told the jury that if they did not reach a unanimous verdict on all counts, they would have failed their purpose.

In *Unites States v. Frost,* 125 F.3d 346, 374–75 (6th Cir. 1997), the Sixth Circuit approved, on direct review, a deadlocked jury instruction that included the following language:

> Please keep in mind how very important it is for you to reach unanimous agreement. If you cannot agree, and if this case is tried again, there is no reason to believe that any new evidence will be presented, or that the next 12 jurors will be any more conscientious and impartial than you are.

*Id.* at 374–75. *See also United States v. Jones*, 364 F. App'x 205, 209–10 (6th Cir. 2010) (holding, on direct review, a charge which advised the jury that any future jury would be selected in the same manner as the deadlocked jury and there was no reason to believe they would be more capable of reaching a verdict was not coercive); *Miller-Bey v. Stine,* 159 F. Supp. 2d 657, 666–67 (E.D. Mich. 2001) (holding, on habeas review, the following instruction was not coercive: "You are selected in the same manner and from the same source which any future jury must be and there is no reason to suppose that the case will ever be submitted to 12 men and women more intelligent or impartial or more competent to decide it. Or that more or clearer evidence would be produced on one side or the other.").

In this case, the trial judge stressed that no juror should give up his or her conscientiously held beliefs, encouraged all jurors to reexamine their own and other jurors' beliefs and the basis for those beliefs, and, importantly, cautioned that no juror should change his or her mind "only

for the sake of reaching agreement." (ECF No. 8-12, PageID.2120.) Considering these cautions and under the totality of the circumstances of this case, the language regarding a subsequent jury was not coercive and did not rise to the level of a constitutional violation.

### D. Prosecutorial Misconduct (Claims IV, VI)

In his fourth and sixth claims, Petitioner raises claims of prosecutorial misconduct. Specifically, Petitioner claims that the prosecutor intentionally inflamed the passions of the jury, expressed his personal belief in Petitioner's guilt, failed to endorse res gestae witnesses, and abused his charging authority.[4] Petitioner also claims that defense counsel was ineffective for failing to object to the prosecutor's conduct.

Under *Darden v. Wainwright,* 477 U.S. 168 (1986), a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally

---

[4] Respondent argues that this claim is procedurally defaulted. The Court finds it more efficient to proceed directly to the merits of the claim. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003).

condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (alteration in original) (quotation omitted). "That leeway increases in assessing a state court's ruling under AEDPA," as this court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638–39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

First, Petitioner argues that the prosecutor improperly inflamed the jury by eliciting testimony regarding gang membership, sarcastically referring to Petitioner as a "family guy" and, arguing that "they" shot the victim "like a dog." (ECF No. 8-9, PageID.2049.) The trial court, the last state court to issue a reasoned opinion addressing this claim, held that

31

the prosecutor simply argued reasonable inferences from the evidence and was not required to use the "blandest possible terms to do so." (ECF No. 3-10, PageID.1037–38.) The court also noted that any improper comments were cured by the trial court's instructions that the attorneys' arguments were not evidence. *Id.*

Prosecutors "must obey the cardinal rule that a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotation omitted). The trial court's assessment of the prosecutor's conduct is supported by the record. The prosecutor's language was not inflammatory, nor does it appear intended to incite passions or prejudices. Also, as noted, the jury was instructed to base their decision only on the evidence and the law, not on their sympathies or prejudices. *See Cameron v. Pitcher*, No. 99-cv-74906, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001) (holding that jury instruction advising jurors they were required to decide facts on basis of properly admitted evidence mitigated prosecutor's civic duty argument). The trial court's decision denying this claim was not contrary to, or an unreasonable application of, *Darden*.

Next, Petitioner claims that the prosecutor improperly expressed his personal belief in Petitioner's guilt when discussing the 911 caller's fear: "[T]he person that caused this terror is in the courtroom, and it's Bryan Valentin." (ECF No. 8-9, PageID.2052–2053.) Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18–19 (1985). Here, the argument was based upon the evidence presented at trial. The reference was brief and jurors were instructed that they alone should assess witnesses' credibility. The Court finds no misconduct in the prosecutor's statement.

Petitioner argues that the prosecutor committed misconduct by failing to secure res gestae witnesses. The state-law requirement that prosecutors produce res gestae witnesses is outside the scope of federal

habeas review. *Collier v. Lafler*, No. 09-1477, 2011 WL 1211465, *4 (6th Cir. March 30, 2011). *See also Atkins v. Foltz*, No. 87–1341, 1988 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam) ("[A]lthough Michigan law requires the production of all res gestae witnesses, [federal] court cannot hear state claims on petition for writ of habeas corpus ... ." (internal citation omitted)).

Next, Petitioner claims that the prosecutor abused his charging authority by charging Petitioner with first-degree murder in the absence of sufficient evidence. A prosecutor has broad discretion in deciding what charges to pursue, and the prosecutor's charging decisions are generally not subject to review by the courts. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). As discussed above, the Michigan Court of Appeals and this Court have found, there was sufficient evidence to support Petitioner's first-degree murder conviction. There is also no indication in the record that the prosecutor's charging decision was vindictive or based upon any impermissible factors.

34

Petitioner fails to establish that the prosecutor abused his discretion or violated constitutional principles by charging Petitioner with first-degree murder and habeas relief is not warranted on this claim.

Finally, Petitioner argues that counsel was ineffective for failing to object to the prosecutor's misconduct. Petitioner has failed to show that the prosecutor engaged in misconduct. Counsel, therefore, was not ineffective for failing to object on this basis.

### E. Ineffective Assistance of Appellate Counsel (Claim VII)

Petitioner argues that appellate counsel was ineffective because he failed to raise the claims raised in his motions for relief from judgment on direct appeal and failed to assist him in filing his pro per supplemental brief.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The Supreme Court held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every

> "colorable" claim suggested by a client would disserve the . . .
> goal of vigorous and effective advocacy. . . . Nothing in the
> Constitution or our interpretation of that document requires
> such a standard.

*Id.* at 754. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). Petitioner has not shown that any of the claims he argues that his appellate attorney should have raised on appeal have merit. Therefore, counsel was not ineffective in failing to raise them.

### F. State law claim (Claim VIII)

Petitioner claims that he demonstrated good cause and actual prejudice to proceed under Mich. Ct. R. 6.508(D). This is a state law claim. Habeas relief is not available for a state court's interpretation of state post-conviction rules. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, (1991) (habeas relief is not available for perceived errors of state law). Moreover, a showing of cause and prejudice does not state an independent basis for habeas corpus relief, it is merely a gateway to allow consideration of an otherwise defaulted claim. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

### G. Actual Innocence Claims (Claims IX, X, and XI)

In his ninth claim, Petitioner asserts that he is entitled to reversal of his convictions and a new trial because he has made a showing of actual innocence based on newly-discovered evidence. He maintains in his tenth and eleventh claims that, because he is innocent, his non-parolable life sentence violates the Due Process Clause and the Eighth Amendment's ban on cruel and unusual punishment.

Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant

unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence is not congnizable on federal habeas review. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("[W]e have repeatedly indicated that such claims [of actual innocence] are not cognizable on habeas."), *Bowman v. Haas*, No. 15-1485, 2016 WL 612019, *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding).

While a free-standing actual innocence claim may not provide a basis for habeas relief, an actual innocence claim may excuse a procedural default. *Muntaser v. Bradshaw*, 429 Fed. App'x 515, 521 (6th Cir. 2011). In this case, the Court has chosen to address the merits of the claims Respondent argues are procedurally barred. Therefore, the Court need not address whether Petitioner procedurally defaulted his claims or, if so, whether his actual innocence claim excuses the default. Nevertheless, the Court briefly addresses Petitioner's actual innocence claim as an alternative ground.

38

A prisoner may excuse a procedural default by a showing that a fundamental miscarriage of justice would occur if his claims were not reviewed. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). A prisoner asserting actual innocence to excuse a procedural default "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This standard is "demanding and permits review only in the 'extraordinary' case." *Id.* at 538 (quoting *Schlup*, 513 U.S. at 327). A credible actual-innocence claim "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence– that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner claims the new evidence shows his innocence in two ways. First, he argues the new evidence shows the shooters acted in self-defense because Crawford was shot *after* he pulled a gun and aimed it at

Petitioner's group. But a claim of self-defense is a claim of legal innocence, not factual innocence. *See Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, *8 (6th Cir. Nov. 30, 2016); *Harvey v. Jones*, 179 Fed. App'x 294, 298–99 (6th Cir. 2006); *Bushner v. Bracy*, No. 17-3553, 2017 WL 9480312, at *3 (6th Cir. Dec. 11, 2017). As such, it cannot excuse a procedural default. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (actual innocence exception encompasses only claims of factual innocence rather than claims of legal innocence).

Second, Petitioner claims that evidence that Crawford drew and pointed his gun before the deadly shots negates any finding of premeditation. The self-serving affidavits of Galvan and Cintron, executed seven and eight years, respectively, after the shooting, are insufficient to show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt had they considered the evidence. Similarly, Bass's affidavit, which also suffers from previously discussed credibility issues, fails to satisfy this standard. Bass does not speak to Hurner's testimony that Petitioner was armed when he came looking for Crawford and angry when Hurner did not disclose Crawford's address. There was also evidence that Petitioner

and his codefendants arrived at Crawford's house armed, forced their way into the home, and pulled masks or bandanas over their faces when Crawford arrived home. Considering this evidence, Petitioner fails to show a credible claim of actual innocence.

## IV.   Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

The Court grants Petitioner leave to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V.   Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Petitioner may proceed on appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: January 25, 2023          s/Judith E. Levy
   Ann Arbor, Michigan          JUDITH E. LEVY
                                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2023.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager